**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JOHN REHWINKEL**, *on behalf of himself and all others similarly situated*,<br><br>*Plaintiff*,<br>v.<br><br>**INSURANCE SUPERMARKET, INC.**,<br><br>*Defendant*. | Case No.: 1:25-cv-00600-CMH-LRV<br><br>**FIRST AMENDED COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of the marketing practices of Defendant, Insurance Supermarket Inc. ("Defendant" or "Insurance Supermarket") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Virginia Telephone Privacy Protection Act, § 59.1-510, *et seq*. ("VTPPA").

2. Defendant makes, or has made on its behalf, prerecorded telemarketing calls soliciting its insurance products and services.

3. Defendant makes these calls to individuals whose telephone numbers are registered on the National Do-Not-Call Registry ("DNC").

4. Defendant continues its telemarketing campaign even after it receives requests from the called party requesting that Defendant stop.

5. Accordingly, Plaintiff brings this action on behalf of himself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the claims under Virginia state law alleged herein arising out of the same controversy.

8. This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District and has committed tortious acts in/from this District. For example, Defendant targeted a resident of this District who's area code is (540), which is associated with the State of Virginia.

9. Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

## PARTIES

10. Plaintiff John Rehwinkel ("Mr. Rehwinkel" or "Plaintiff") is, and at all times mentioned herein was, a citizen and resident of Lovettsville, Virginia.

11. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

12. Defendant is, and at all times mentioned herein was, a Delaware corporation headquartered at 1951 Northwest 7th Avenue, Suite 600, Miami, Florida 33136.

13. Defendant may be served via its registered agent, Vanessa Fonseca, at 1951 Northwest 7th Avenue, Suite 600, Miami, Florida 33136.

14. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

15. Defendant is, and at all times mentioned herein was, a "seller" as defined by

VTPPA § 59.1-510.

16. Defendant is, and at all times mentioned herein was, a "telephone solicitor" as defined by VTPPA § 59.1-510.

**TCPA BACKGROUND**

17. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

18. Section 227(b) of the TCPA prohibits making commercial calls to residential telephone lines using an artificial or prerecorded voice without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(B).

19. A violation of section 227(b) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3)(B) and (C).

*National Do Not Call Registry*

20. The TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

21. These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

22. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

*Virginia Telephone Privacy Protection Act*

23. VTPPA provides additional protections from telemarketing abuse to Virginia residents, like Plaintiff.

24. VTPPA defines a "telephone solicitation call" as follows:

> (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone.

VTPPA § 59.1-510.

25. VTPAA requires that a telephone solicitor identify himself or herself by his first and last name and identify the person on whose behalf the telephone solicitation call is being made promptly upon making contact with the called person. VTPPA § 59.1-512.

26. VTPAA prohibits a telephone solicitor from initiating, or causing to be initiated, "a telephone solicitation call to a telephone number when a person at such telephone number previously has stated that he does not wish to receive a telephone solicitation call made by or on behalf of the person on whose behalf the telephone solicitation call is being made." VTPPA § 59.1-514(A).

27. VTPAA provides that a statement requesting no further calls "may be made to a telephone solicitor or to the person on whose behalf the telephone solicitation call is being made if that person is different from the telephone solicitor." VTPPA § 59.1-514(A).

28. VTPAA provides that [a]ny such request not to receive telephone solicitation calls shall be honored for at least 10 years from the time the request is made."

29. VTPAA also prohibits a telephone solicitor from initiating, or causing to be initiated "a telephone solicitation call to a telephone number on the National Do Not Call Registry maintained by the federal government . . . ." VTPPA § 59.1-514(B).

30. VTPAA provides Virginia residents with a private right of action :

> Any natural person who is aggrieved by a violation of this chapter shall be entitled to initiate an action against any responsible person to enjoin such violation and to recover from any responsible person damages in the amount of $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation.

VTPAA § 59.1-515(A).

31. If the Court finds a willful violation, the court may, in its discretion, increase the amount of any damages awarded for a first or second violation to an mount not exceeding $5,000. VTPAA § 59.1-515(B).

32. In addition to any damages awarded, a plaintiff may also be awarded reasonable attorney fees and court costs. VTPAA § 59.1-515(C).

33. VTPAA provides that sellers and telephone solicitors are jointly and severally liable for violations of VTPAA:

> A seller on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call in violation of any provision of § 59.1-511, 59.1-512, 59.1-513, or 59.1-514 and the telephone solicitor making or initiating the telephone call shall be jointly and severally liable for such violation.

VTPAA § 59.1-514-1.

34. VTPAA also provides a rebuttable presumption regarding the relationships between sellers and telephone solicitors:

> A telephone solicitation call offering or advertising a seller's property, goods, or services shall be presumed to have been made or initiated on behalf of or for the benefit of the seller, whether or not any agency relationship exists between the telephone solicitor and the seller, whether or not the seller supervised or directed the conduct of the telephone solicitor, and whether or not the telephone solicitor is shown to have acted at the seller's direction and request when making or initiating the telephone solicitation call. The presumption may be rebutted if it is shown by clear and convincing evidence that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent.

VTPPA § 59.1-514-1(B).

## FACTUAL ALLEGATIONS

35. Plaintiff is the user of a residential telephone number ending in 3937.

36. Plaintiff's telephone number has an area code assigned to Virginia (i.e., "540").

37. Plaintiff's telephone number ending in 3937 is used for residential purposes and is not associated with a business.

38. Plaintiff registered his telephone number ending in 3937 on the National Do-Not-Call Registry on January 29, 2014 because he did not want to receive the types of solicitation calls at issue here.

39. Defendant made, or had made on its behalf, multiple telephone solicitation calls to Plaintiff soliciting Defendant's insurance products and services.

40. These calls came from changing 10-digit telephone numbers, including but not limited to: (571) 386-0283, (571) 475-1596, (870) 744-4848, (804) 479-3463, and (571) 677-9170.[1]

---

[1] Upon information and belief, the changing 10-digit telephone numbers displayed on the

41. For example, on August 23, 2022, Plaintiff received a call that used a series of artificial voices and/or prerecorded messages to interact with Plaintiff.

42. After Plaintiff answered the phone, the artificial voice and/or prerecorded message stated:

> Hi, this is Mary from American Senior Citizen Care. How are you doing today. Well. I'm calling you just to inform you about a new state-regulated final expense insurance plan. That is just now approved for senior citizens who are on a fixed income like social security disability and retirement. This plan is designed to cover 100% of your funeral, burial, and cremation expenses. How old are you?

43. The artificial and/or prerecorded voice did not provide a last name.

44. The artificial and/or prerecorded voice did not identify the person on whose behalf the telephone solicitation call was being made.

45. Upon information and belief "American Senior Citizen Care" is a fake name used by Defendant and/or its vendors to conceal its/their true identity for the purpose of avoiding their illegal telemarketing operation from being uncovered.

46. Plaintiff knew this was an artificial voice and or prerecorded message based on the cadence and tone of the caller's voice as well as awkward pauses.

47. In addition, numerous consumers have complained online about this exact same recording on popular consumer websites and YouTube.[2]

48. Plaintiff responded by providing an age.

49. The artificial voice and/or prerecorded message stated:

---

caller ID of the recipient of the calls are "spoofed" and are not the true telephone numbers the calls are placed from. *See* 47 U.S.C. § 227(e)

[2] *See* https://www.nomorobo.com/lookup/928-352-2965 (last accessed June 20, 2025); https://www.nomorobo.com/lookup/346-466-8802 (last accessed June 20, 2025); https://www.youtube.com/watch?v=zYjAo1UEVx8 (last accessed June 20, 2025); https://directory.youmail.com/phone/513-506-3915 (last accessed June 20, 2025).

> Great. Let me bring the state license coordinator for your state on the line to share information with you. Please hold.

50. The call was then connected to "Issac."

51. Issac was aware of the age that Plaintiff provided in response to the prerecorded message.

52. Upon information and belief, Issac knew the age that Plaintiff provided in response to the prerecorded message because the system used by Defendant or its third party vendor to place prerecorded calls and screen callers was interconnected and designed capture information and provide it to Defendant's agents or representatives.

53. Issac attempted to connect Plaintiff to the "licensed agent," but the call terminated before a connection could be made.

54. On September 1, 2022, Plaintiff received another call from Defendant, or a third party calling on Defendant's behalf.

55. After Plaintiff answered the phone, the artificial voice and/or prerecorded message stated:

> I'm calling you just to inform you about a new state-regulated final expense insurance plan. That is just now approved for senior citizens who are on a fixed income like social security disability and retirement. This plan is designed to cover 100% of your funeral, burial, and cremation expenses. And just to make sure you qualify, how old are you?

56. The artificial and/or prerecorded voice did not provide a first and last name.

57. The artificial and/or prerecorded voice did not identify the person on whose behalf the telephone solicitation call was being made.

58. Plaintiff interacted with the artificial voice and/or prerecorded voice but the call terminated.

59. Later that day, Plaintiff received another call that used a series of artificial voice and/or prerecorded voice messages.

60. When Plaintiff answered the phone the artificial voice and/or prerecorded message stated:

> Hi, this is Mary from American Senior Citizen Care. How are you doing today. Well. I'm calling you just to inform you about a new state-regulated final expense insurance plan. That is just now approved for senior citizens who are on a fixed income like social security disability and retirement. This plan is designed to cover 100% of your funeral, burial, and cremation expenses. How old are you?

61. The artificial and/or prerecorded voice did not provide a last name.

62. The artificial and/or prerecorded voice did not identify the person on whose behalf the telephone solicitation call was being made.

63. Upon information and belief "American Senior Citizen Care" is a fake name used by Defendant and/or its vendors to conceal its/their true identity for the purpose of avoiding their illegal telemarketing operation from being uncovered.

64. Plaintiff interacted with the artificial voice and/or prerecorded voice and was transferred to "Alex" who stated he was a State Benefit Coordinator for Final Expense. He advised he was located in Florida.

65. Alex did not provide his last name.

66. Alex did not identify the person on whose behalf the telephone solicitation call was being made.

67. Alex asked for some information and then transferred Plaintiff to Defendant's representative, "Cadine."

68. Cadine answered the call and identified herself as being "with Insurance

Supermarket."

69. Cadine did not provide her last name.

70. She advised that the call was being recorded and then requested various information about Plaintiff and then would transfer him to another agent.

71. Cadine then transferred Plaintiff to her co-worker, "Miranda Dakroub."

72. Ms. Dakroub advised that the call was being recorded and provided Plaintiff with her insurance license number: 3001426618.

73. Plaintiff asked Ms. Dakroub if she was with Insurance Supermarket and she confirmed that she was.

74. Ms. Dakroub advised that Insurance Supermarket was based in Florida and Canada.

75. Plaintiff asked for Insurance Supermarket's address and explained that Insurance Supermarket and/or its vendors were making illegal calls.

76. Ms. Dakroub advised she would put his telephone number on the internal do-not call list.

77. Ms. Dakroub provided Plaintiff with the address of 1951 NW 7th Ave. #600 Miami, FL 33136.

78. Ms. Dakroub apologized for the calls and terminated the call.

79. Despite being advised that he was being placed on Defendant's internal do-not-call list, about four hours later, Plaintiff received another prerecorded call that played the same artificial voice and/or prerecorded voice message:

> Hi, this is Mary from American Senior Citizen Care. How are you doing today. Well. I'm calling you just to inform you about a new state-regulated final expense insurance plan. That is just now approved for senior citizens who are on a fixed income like social security disability and retirement. This plan is designed to cover 100% of your funeral, burial, and cremation expenses. How old are you?

80. Plaintiff continued to receive calls from Defendant and/or its agents on at least the following dates and times:

- 2022-09-19 at 13:28;
- 2022-10-10 at 12:30;
- 2022-10-25 at 13:46;
- 2022-10-31 at 15:43;
- 2022-11-02 at 12:49;
- 2022-11-03 at 16:44;
- 2022-11-16 at 10:35
- 2022-11-17 at 11:50;
- 2022-11-23 at 16:21;
- 2022-11-30 at 14:45;
- 2022-12-08 at 14:23;
- 2022-12-08 at 14:58;
- 2022-12-09 at 12:01;
- 2022-12-13 at 10:09;
- 2022-12-13 at 10:20;
- 2022-12-15 at 12:03;
- 2022-12-16 at 11:29;
- 2023-01-13 at 09:17;
- 2023-01-16 at 16:39;
- 2023-01-17 at 16:42;

- 2023-01-26 at 11:07;
- 2023-01-27 at 10:16;
- 2023-01-30 at 12:41;
- 2023-02-10 at 14:22;
- 2023-02-16 at 15:19;
- 2023-02-27 at 15:21;
- 2023-02-28 at 10:36;
- 2023-02-28 at 13:51;
- 2023-02-28 at 16:02;
- 2023-03-27 at 16:32;
- 2023-04-14 at 13:44;
- 2023-04-18 at 12:34;
- 2023-05-03 at 14:05;
- 2023-05-08 at 10:47;
- 2023-05-09 at 10:14;
- 2023-05-15 at 10:53;
- 2023-05-31 at 16:55;
- 2023-06-14 at 12:10;
- 2023-06-15 at 16:07;
- 2023-06-16 at 17:44;
- 2023-06-23 at 11:28;
- 2023-07-10 at 17:20;
- 2023-07-17 at 11:23;

- 2023-07-28 at 10:55;
- 2023-08-01 at 16:01;
- 2023-08-09 at 10:57;
- 2023-08-10 at 13:39;
- 2023-08-17 at 12:46;
- 2023-08-18 at 09:37;
- 2023-08-18 at 10:54;
- 2023-08-21 at 10:19;
- 2023-08-30 at 16:51;
- 2023-08-31 at 16:53;
- 2023-09-18 at 12:17;
- 2023-10-10 at 10:50;
- 2023-10-17 at 12:37;
- 2023-10-23 at 10:52;
- 2023-11-14 at 12:25;
- 2023-11-15 at 11:37;
- 2023-11-28 at 15:20;
- 2023-12-06 at 10:50;
- 2023-12-13 at 13:36;
- 2024-01-05 at 09:33;
- 2024-01-23 at 17:03;
- 2024-02-01 at 14:47;
- 2024-02-02 at 11:05;

- 2024-02-07 at 14:58;
- 2024-02-26 at 15:06;
- 2024-02-26 at 16:53;
- 2024-02-27 at 10:25;
- 2024-02-27 at 13:11;
- 2024-03-07 at 09:57;
- 2024-03-18 at 13:06;
- 2024-03-20 at 16:00;
- 2024-03-21 at 13:18;
- 2024-03-21 at 14:06;
- 2024-03-22 at 15:44;
- 2024-04-23 at 16:26;
- 2024-04-29 at 12:22;
- 2024-04-29 at 14:19;
- 2024-04-29 at 16:31;
- 2024-05-07 at 17:06;
- 2024-06-20 at 13:01;
- 2024-07-02 at 15:01;
- 2024-07-11 at 10:42;
- 2024-07-24 at 16:49;
- 2024-08-07 at 12:05;
- 2024-08-09 at 13:30;
- 2024-08-13 at 16:17;

- 2024-08-13 at 16:17;
- 2024-08-13 at 16:44;
- 2024-08-15 at 17:00;
- 2024-08-19 at 09:58;
- 2024-08-19 at 12:12;
- 2024-08-22 at 11:28;
- 2024-08-27 at 12:28;
- 2024-08-27 at 12:35;
- 2024-08-28 at 12:46;
- 2024-08-29 at 12:17;
- 2024-09-03 at 14:08;
- 2024-09-06 at 11:23;
- 2024-09-09 at 16:37;
- 2024-09-17 at 13:56;
- 2024-09-19 at 12:40;
- 2024-09-19 at 13:58;
- 2024-09-19 at 16:07;
- 2024-09-20 at 16:24;
- 2024-09-20 at 16:33;
- 2024-09-24 at 14:04;
- 2024-09-25 at 12:41;

81. Plaintiff did not provide his consent to receive these calls.

82. To the extent Defendant had any consent to make these calls, Plaintiff revoked such

consent as shown above.

83. Defendant's records or the records of third parties will reveal all of the calls Defendant made to Plaintiff and the putative classes.

84. Despite Plaintiff's requests, Defendant and/or its third party agents continued to call Plaintiff.

85. Defendant or those otherwise calling on Defendant's behalf, did not have written do-not-call policies or procedures at the time of the calls to Plaintiff and the classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued calls to Plaintiff after he directly asked not to be contacted.

86. Defendant's violations were negligent.

87. Alternatively, Defendant's violations were willful and knowing.

88. Plaintiff and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted text messages. The calls were annoying and a nuisance, and wasted the time of Plaintiff and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY FOR THE TELEMARKETING SCHEME

89. Defendant makes, directly or through persons calling on its behalf, telephone solicitation calls, to hundreds if not thousands of consumers across the U.S.

### *Defendant's Direct Liability*

90. To the extent Defendant places the illegal calls itself, it is directly liable for the

calls.

91. Upon information and belief, Defendant owns and operates call centers that are engaged in both inbound and outbound telemarketing.

92. For example, Defendant is actively recruiting for "Remote Call Center" employees/agents on its website.[3]

93. Defendant's job posting states that the position will include "manag[ing] incoming and outbound call sales opportunities."[4]

94. Upon information and belief, Defendant does not require its sales/call center employees/agents to source their own leads.

95. Upon information and belief, Defendant has set up a system where Defendant is responsible for sourcing leads for its sales/call center employees/agents.

96. Upon information and belief, Defendant pre-qualifies the leads it sources for its sales/call center employees/agents before having the leads transferred to its sales/call center employees/agents with the appropriate state license to sell insurance to the person called.

97. Upon information and belief, Defendant sources leads for its sales/call center employees/agents through unsolicited outbound calls.

98. Upon information and belief, Defendant places these calls itself.

99. Upon information and belief Defendant attempts to qualify and funnel these leads to its sales/call center employees/agents through a filtering process that starts with an artificial or prerecorded interactive voice to obtain basic information from the called party and then transfers to one or more qualifiers before the call is transferred to one of Defendant's sales/call center employees/agents who is licensed in the call recipient's state.

---

[3] *See* https://insurance-supermarket.com/jobs/llqp-life-insurance-advisor-remote-call-center/ (last accessed June 23, 2025).

[4] *Id.*

100. Upon information and belief, Defendant determines the information that must be obtained by the artificial or prerecorded interactive voice system and its qualifiers before the call is transferred to its sales/call center employee/agents with the appropriate state licensure to sell that individual insurance.

101. Defendant's employees have taken to job review websites, such as Indeed.com and Glassdoor.com and have described this process.[5]

102. For example, on February 1, 2025, the following review was left at Indeed.com explaining that Defendant uses a "transfer guide" or "screener" to give an introduction before transferring the call to the sales/call center employee/agents that is licensed to sell insurance.

★☆☆☆☆ February 1, 2025

**Poor experience**

**Anonymous** Remote

This is a high pressure sales job. The transfer guide (screener) gives a long drawn out introduction so that the transfer will last at least 90 sec. As long as the call last at least 90 sec the transfer guide is compensated. Sometimes transfer guides would even hold the line on their end knowing the client hung up to insure that call lasted 90 sec. As an agent if a call lasted over 90 seconds and you didn't convert it into a sale it affected your conversion.

Majority of the time when a client was transferred over, clients had no idea the phone call was about life insurance. Clients were expecting the free benefits advertised online and most of them didn't have money to buy life insurance.

As an Agent here there is a lot of constructive coaching and it dwells on the negative a lot. If you had a good day yesterday and no sale today, yesterday would be forgotten about. Also, it's hard to know where you stand here. Your metrics could be better than others but others still get promoted over you .

Also, you are told that you'll get major holidays off but as time goes on that will be to their descresion.

103. On April 19, 2024, the following review was left at Indeed.com that was critical of the quality of the leads noting that they were "folks who never wished to be called":

---

[5] *See* https://www.indeed.com/cmp/Insurance-Supermarket-Inc.-2/reviews?fcountry=US&sort=rating_asc (last accessed June 23, 2025); https://www.glassdoor.com/Reviews/Insurance-Supermarket-Reviews-E746247.htm (last accessed June 23, 2025).

> April 19, 2024
>
> **Poor *leads*, low comp**
>
> **Insurance Agent** Remote
>
> This is a 1099 contractor position. Calls are listened in. Micromanaged. Long wait to get paid commission. Though this role is 1099 you are required to work 5 days a week. Leads are pathetic. Most of the incoming calls are from folks who never wished to be called.

104. On June 6, 2024, the following review was left at Indeed.com that stated the employee had to make over 400 calls a day to people that didn't sign up for anything:

> June 6, 2024
>
> **Productivity and work fun**
>
> **Customer Relations Specialist** Canada Creek Ranch, MI
>
> None or very little work fun, hostile environment and high impossible demands.
>
> Hardest part of the job.
> Making over 400 calls with no positive feedback, calling people that didn't sign up for anything and being abused on the calls.

105. Upon information and belief, Defendant closely monitors all of its calls, including recording calls, listening and monitoring its calls, and providing its agents with criticism and feedback regarding the calls and sales efforts.

106. For example, on July 8, 2022, the following review was left at Indeed.com explaining Defendant's highly micromanaging and control efforts:

> July 8, 2022
>
> **Unrealistic goals, and micro management**
>
> **Qualifier** Remote
>
> These people have you under a microscope every second of every day, it was absolutely suffocating. And knowing that they are listening to all your calls, from start to finish, it places extra pressure on an already anxious individual like myself. Always calling me to the side to play back my recorded calls and pick apart everything I did and criticize it. They also set these daily goals that you must reach, for example, 50% conversion. And research shows that many online companies barely get 10% conversion in a day. So this goal was too greedy of them.

107. One former employee even noted that Defendant installs spyware on the computers

of its sales force to monitor their interactions, leaving the following review on Glassdoor.com on January 1, 2025:

> 1.0 ★☆☆☆☆ Jan 1, 2025
>
> **Horrible Company**
>
> Sales advisor
>
> Former employee, less than 1 year | Manchester, NH
>
> ✕ Recommend ✕ CEO approval ✕ Business outlook
>
> **Pros**
>
> They have you install spyware on your computer that takes your information and their call center in India will take your contact information and run with it. I tried opening an investigation into this internally, and they let me go. This company will barely pay you any bonus and they have too high expectations. They contact people on the Do Not Call list and laugh about it. I opened a case with the Attorney General in my state. This company is deceptive to its workers and clients. They pressure agents to keep people on the phone for a certain amount of time or they give you the boot. It's a toxic environment and management is incompetent.
>
> **Cons**
>
> Poor bonus structure
> High expectations for metrics
>
> **Advice to Management**
>
> Be a better company and change up your metrics, stop using deceptive practices to reel people in for business.
>
> Helpful Share 2

108. This employee even admitted that Defendant contacts people on the Do Not Call list and "laughs about it."

109. Upon information and belief, Defendant tracks the calls and leads it provides to its sales/call center employees/agents and maintains metrics regarding how many of these calls/leads

are closed by its sales/call center employees/agents.

***Defendant's Vicarious Liability***

110. To the extent Defendant uses third party vendors or companies to place the illegal calls on behalf of Defendant and then transfer the calls to Defendant's insurance agents, Defendant is vicariously liable for the calls.

111. "Generally, the existence and scope of agency relationships are factual matters,' and are therefore often appropriately left to the jury." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (quoting *Metco Prods., Inc. Div. of Case Mfg. Co. v. NLRB,* 884 F.2d 156, 159 (4th Cir. 1989).

112. Upon information and belief, and in the alternative, Defendant contracts with third parties that engaged in outbound calling campaigns to source leads for Defendant so that the leads can be qualified and transferred to Defendant's sales/call center employees/agents.

113. Upon information and belief, Defendant provides such third parties with scripts and other requirements for these calls, including what specific information must be obtained and whether, based on that information, the call should be transferred to one of Defendant's qualifiers and/or its sales/call center employees/agents.

114. Upon information and belief, Defendant provides age parameters and instructs its third parties to collect age information and only pass calls on where the recipient of the call states they are a certain age.

115. Upon information and belief, Defendant instructed such third parties to advertise for a "new state-regulated final expense insurance plan" and to target senior citizens who are on a fixed income like social security disability or retirement.

116. Upon information and belief, Defendant provided such third parties with scripts and

other requirements for these calls, including what specific information must be obtained and whether, based on that information, the call should be transferred to one of Defendant's qualifiers or its sales/call center employees/agents.

117. Upon information and belief, Defendant provided such third parties with a telephone number to transfer leads to, that could be used by Defendant to track the source of the leads and compensate such third party for transferring the lead to Defendant's qualifiers and/or its sales/call center employees/agents.

118. Upon information and belief, Defendant controls the volume of the leads provided to its sales/call center employees/agents so that its sales/call center employees /agents do not become overwhelmed.

119. Upon information and belief, Defendant instructed such third parties to read a specific disclosure to the called parties asking the called party to authorize the call transfer to Defendant.

120. Upon information and belief, Defendant instructs its third parties to read this disclosure so that Defendant can claim it had consent for the initial call (that was placed without any consent).

121. Upon information and belief, Defendant derived a benefit from the calling party's interaction with the Plaintiff by the attempted issuance of an insurance policy.

122. Upon information and belief, Defendant maintained control over the calling party's actions.

123. For example, and upon information and belief, Defendant had the ability to prohibit such third party from using artificial or prerecorded voice technology to contact consumers.

124. For example, and upon information and belief, Defendant had the ability to instruct

its third parties not to call certain numbers.

125. For example, and upon information and belief, Defendant had the ability to instruct its third parties on which states to call into –to match the states it had/has sales/call center representatives with active licenses.

126. Numerous consumers have complained about Defendant's illegal practices via the Better Business Bureau.[6] These complaining consumers describe an experience identical to Plaintiff's.

127. For example, on April 14, 2023, "Thomas H" described receiving artificial or prerecorded voice calls that followed the same pattern Plaintiff described above:

**Date:** 04/14/2023

**Thomas H**

**Date:** 04/14/2023

Like others have said, I have been cold called on my cell phone every day for weeks, sometimes several times per day. Most of the time there is a bad connection and a robot pretending to be a real person. Once the robot gets a few satisfactory responses, it connects to a intermediary real person who asks a few more qualifying questions, then hands the call over to a insurance supermarket inc. sales person. I spoke with ************************** who tried to sell me funeral insurance. This company is a disgrace. I am filing a complaint against ************************** NPN ******** and insurance supermarket incorporated.

**Insurance Supermarket Inc.**

**Date:** 04/17/2023

Good afternoon ******, We read with regret your review of our company. Ensuring customer satisfaction is a primary concerns of ISI and we would like to rectify the situation. ISI does not accept call transfers from any contracted third parties from numbers on the National Do Not Call Registry unless express consent can be provided. We would like to be able to address your concerns with the third party and ensure you no longer recieve unwanted calls. In order to do this we need the number(s) where you received the calls. If you could please provide those to me I would be happy to work together to resolve the issues you have raised.
Please email us at **************** your telephone number and we will work together to resolve the issue.

128. On April 17, 2023, Defendant responded admitting that it indeed has "contracted

[6] https://www.bbb.org/us/fl/miami/profile/life-insurance/insurance-supermarket-inc-0633-90606061/customer-reviews (last accessed June 23, 2025); https://www.bbb.org/us/fl/miami/profile/life-insurance/insurance-supermarket-inc-0633-90606061/complaints (last accessed June 23, 2025).

third parties" and has the ability to address "concerns with the third party," demonstrating that Defendant can control the actions of any contracted third parties that place calls on its behalf.

129. In addition, on February 14, 2023, Defendant responded to a consumer complaint on the Better Business Bureau website about unsolicited calls selling life insurance and advised, *inter alia*, that Defendant would instruct its contracted third parties to not call certain numbers, again demonstrating that Defendant can control the actions of any contracted third parties that place calls on its behalf:

> That said, in light of you having reached out and expressing your frustration, we have added your number to ISIs internal do not call list and have relayed the same instructions to our third parties so that they may do the same on their end. If you do hold any other numbers, please do provide those to us and we would be more than happy to add those to ISIs internal do not call list as well.
> As an added precaution, we would recommend that you re-register your number with the National Do Not Call Registry to cancel and void out the consent record that is prompting companies to call your ************. The link to the National DNC registry has been provided here for your convenience: **************************

130. Furthermore, numerous consumers have complained about Defendant's telemarketing campaigns to Defendant via the Better Business Bureau. Below are some examples of the many complaints Defendant has received:

> **Jonathan M.**
>
> **Date:** 07/18/2022
>
> This company is a ****. They hire overseas call centers to call people constantly until they reach an elderly person and **** them into paying for their services. This company calls constantly with no regard for the national do not call list. Avoid this company, their predatory business practices are illegal.

## Initial Complaint

**Date:** 04/09/2025

**Type:** Service or Repair Issues

**Status:** Resolved

SOLICITING PHONE ******, EVERY DAY I GET ****** FROM THIS COMPANY THEY HAVE ****** COMING IN FROM NUMBERS THAT CAN NOT BE CALLED BACK ON WITH PRE RECORDED MESSAGE ONES I GET TO *** THEY TELL ME THEY ARE INSURANCE SUPERMARKET *** FROM ************, I ASK THEM DO NOT CALL ME I AM ON DO NOT CAL ********* THEY WOULD HANG UP, I WENT ONLINE AND FOUND THEIR NUMBER AND CALLED DIRECTLY TO REQUEST STOP CALLING BUT THEY WOULD HANG UP ON ME. I ***ORTED THEM TO *** ALREADY AND STILL RECEIVE ******, I AM ASKING FOR YOUR HELP TO STOP HAARRASMENT ******, I WORK FROM PHONE AND STAFF CRITICALLY ILL PATIENTS WITH NURSES THEIR ****** DISTRAPTING MY ABILITY TO DO MY JOB FOR PATIENTS ON LIFESUPPORT, THEY VIOLATED DO NOT CALL REGISTRY RULES AND VIOLATED ME BY NOT REMOVING MY NUMBER AFTER ASKING ON NUMERIOUS OCCASIONS, I HOPE YOU CAN HELP ME

## Initial Complaint

**Date:** 10/19/2024

**Type:** Customer Service Issues

**Status:** Answered

I am being harassed by insurance supermarket. They call me sometimes 6 times a day. I have asked them multiple times to please not call me anymore. It does no good

## Initial Complaint

**Date:** 01/26/2023

**Type:** Product Issues

**Status:** Resolved

Despite being on the Do Not Call Registry, I received a call with a spoofed number from ***** trying to sell me life insurance. The thief on the line thought I am a senior citizen, which makes this all the more reprehensible. I answered his questions to see on whose behalf he was calling and was transferred to a woman (also offshore) who finally told me she was calling for Insurance Supermarket based in *****. I told her she did NOT have permission to call me back if we got cut off and she hung up.Internet search found their website - ********************************************************************* I called and got another offshore rep. I asked for someone in the US (to instruct them to remove my number from their prospect list) and had to go through the qualifying questions (age, medical conditions, whether I have a power of attorney, etc.) and told the rep he (too) did NOT have permission to call back if we were cut off. He wished me a good day and hung up, so I wasn't able to speak with someone in the US to instruct them they were NOT to call my number again.They assumed I was a senior citizen, making this scam and practice disgusting, they spoofed their number when they called which is completely shady, and they BROKE THE *** when they called me in the first place. I have never done business with Insurance Supermarket, I have never requested information from them, nor have I requested any type of contact with this business. I hope that you will warn others who rely on the BBB to avoid this sketchy company at all costs, and I hope they are shut down.

## Initial Complaint

**Date:** 12/02/2022

**Type:** Service or Repair Issues

**Status:** Answered

Nuisance calls from numerous different phone numbers -- up to 12 per day including Saturdays and Sundays.They all start with a robocall, then passed to an agent with all my information, then passed to a "Licensed agent" who will not divulge their credentials or phone number.They have been MOST RUDE sometimes when calling and even comment that my number is on the "DO NOT CALL" list.

**Initial Complaint**

**Date:** 11/23/2022

**Type:** Service or Repair Issues

**Status:** Answered

During the last six to eight months, I have received over 60 telemarketing calls by this company's third party advertiser. During one of the more recent calls, my husband answered, used a fake name, and managed to "play along" long enough to get the company's name and website. He actually recorded the entire call. After that, we contacted Insurance Supermarket to get the matter resolved. My husband was told that they were researching which third party company called, and would provide us with their contact information, as well as putting out a "blanket statement" that the third party advertisers should all cease and desist calling our number. The next day, the same third party called us, claiming to work for the "Do *************** and proceeded to insult and threaten my husband, using the same fake name we gave them the previous day. We have waited for almost three weeks for Insurance Supermarket to give us the third party advertiser's name and contact info, and asked several times for that info, without success. They are now ignoring our requests completely, and the telemarketer is STILL harassing us. After reading all the complaints against the company, it is obvious they are aware that their advertiser is violating the Federal TCPA, as well as multiple state telemarketing laws, and are doing nothing to stop it. They have actually been sued several times for it. At this point, I need to speak to the company's ATTORNEY or LEGAL REPRESENTATION to resolve the matter. If that does not happen, we will forward the matter to an attorney that specializes in TCPA matters, and we will also contact the ******* State ************************ to hold the company accountable, and get the calls to stop.

131. Defendant is aware of these consumer complaints and consistently responds to them, often denying any liability and claiming that it and its third-party vendors have consent for calls.

132. Upon information and belief, Defendnant has developed a strategy whereby it requires its third-party vendors to ask for consent to transfer the call to a licensed representative, so that Defendant can argue it had consent for the call that was transferred to it, despite the initial call being illegal and unsolicited.

133. Defendant consistently affirms and defends the actions of its third-party vendors in response to consumer complaints, knowing the vendors are engaged in illegal or questionable conduct.

134. For example, upon information and belief, Defendant monitors and listens to calls and is aware that individuals that are called report receiving unsolicited calls and complain of the calls.

135. Despite knowing this information, Defendant takes no action to stop the illegal

calls.

136. Upon information and belief, Defendant takes no action to stop the illegal calls because they are profitable to Defendant and because Defendant benefits from the illegal calling practices.

## CLASS ACTION ALLEGATIONS

137. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of the following "Classes," defined as follows:

> **Prerecorded Class:** All persons within the United States who from four years prior to the filing of this action through the date of class certification Defendant (or a person or entity acting on behalf of Defendant) called using an artificial or prerecorded voice message that reference to a final expense insurance plan.
>
> **VTPPA DNC Class**: Plaintiff and all persons within the United States to whose Virginia Area Code telephone number Defendant (or a person or entity acting on behalf of Defendant) placed a call that included reference to a final expense insurance plan when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry, from four years prior to the filing of the Complaint through class certification.
>
> **VTPPA IDNC Class**: Plaintiff and all persons within the United States to whose Virginia Area Code telephone number Defendant (or a person or entity acting on behalf of Defendant) placed a call that included reference to a final expense insurance plan after Defendant's records (or the records of a person or entity acting on behalf of Defendant) reflect that Defendant or a person or entity acting on behalf of Defendant received a request indicating a desire that the person at the telephone number does not wish to receive such calls from Defendant, from four years prior to the filing of the Complaint through class certification.
>
> **VTPPA Identification Class**: Plaintiff and all persons within the United States to whose Virginia Area Code telephone number Defendant placed a call that included reference to a final expense insurance plan that did not provide (1) the first and last name of the caller and/or (2) the name of the person on whose behalf the call was being made.

138. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom

this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

139. The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

140. The exact number and identities of the persons who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

a. The time period(s) during which Defendant or its agents made the calls;

b. The telephone numbers to which Defendant or its agents made the calls;

c. The telephone numbers for which Defendant had prior express written consent;

d. The telephone numbers that of individuals that communicated a desire that Defendant stop received calls;

e. The purposes of the calls;

f. The scripts or prerecorded voice recordings used during the calls; and

g. The names and addresses of Class members.

141. The Class is comprised of hundreds, if not thousands, of individuals.

142. There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

a. Whether Defendant (or someone acting on its behalf) makes telemarketing calls;

b. Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

c. Whether Defendant or the entities with which they contract make solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

d. Whether Defendant or the entities with which they contract make solicitation calls and to telephone numbers that previously communicated a desire to received no further calls;

e. Whether Defendant had the required policies and procedures prior to making its telemarketing calls;

f. Whether Defendant honors do-not-call requests;

g. Whether Defendant's statutory violations were willful and knowing; and

h. Whether Defendant should be enjoined from engaging in such conduct in the future.

143. Plaintiff is a member of the Classes in that Defendant or its agents placed at least two calls to Plaintiff for telemarketing/telephone solicitation purposes to his telephone number, which included a Virginia area code, after he asked Defendant to stop and while his number was registered to on the National Do-Not-Call Registry. In addition, certain of these calls utilized an artificial and/or prerecorded voice and did not provide the last name of the caller or the identity of the person on whose behalf the call was made.

144. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

145. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted text messages and suffered a nuisance and an invasion of their privacy.

146. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

147. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

148. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

149. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

150. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

151. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
**Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On behalf of Plaintiff and the Prerecorded Class)**

152. Plaintiff and the proposed Classes incorporate the allegations contained in Paragraphs 1 through 151 of this Complaint as if fully set forth herein.

153. Defendant placed, or had placed on its behalf, prerecorded telephone calls to Plaintiff's and Class Members' residential telephone numbers without prior express consent.

154. The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b).

155. Defendant has therefore violated 47 U.S.C. § 227(b).

156. As a result of Defendant's unlawful conduct, Plaintiff and the Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

157. Plaintiff and the Prerecorded Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 277(b)(3).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below

**SECOND CAUSE OF ACTION**
**Violations of the VTPPA § 59.1-514(A)**
**(On behalf of Plaintiff and the VTPPA IDNC Class)**

158. Plaintiff and the proposed Class incorporate the allegations of paragraphs 1-151 as if fully set forth herein

159. Defendant initiated, or caused to be initiated, a telephone solicitation call to the Virginia telephone numbers of Plaintiff and the putative VTPPA IDNC Class members after they stated to Defendant or its third party agent that they did not wish to receive a telephone solicitation call made by or on behalf of the person on whose behalf the telephone solicitation call is being made.

160. Plaintiff and putative VTPPA IDNC Class Members are entitled to an award of $500 for the first violation, $1,000 for the second violation, and $5,000 for each subsequent violation. VTPAA § 59.1-515(A).

161. Plaintiff and putative VTPPA IDNC Class Members are entitled to an award of an amount not exceeding $5,000 for a first or second violation if determined to be willful. VTPAA § 59.1-515(B).

162. Plaintiff and putative VTPPA IDNC Class Members are entitled to an award of reasonable attorneys' fees and costs. VTPAA § 59.1-515(C).

163. Pursuant to VTPPA § 59.1-514.1, to the extent Defendant utilized a third-party vendor to place the illegal calls, Defendant is jointly and severally liable for such violation. VTPPA§ 59.1-514.1(A).

**THIRD CAUSE OF ACTION**
**Violations of the VTPPA § 59.1-514(B)**
**(On behalf of Plaintiff and the VTPPA DNC Class)**

164. Plaintiff and the proposed Class incorporate the allegations of paragraphs 1-151 as if fully set forth herein

165. Defendant initiated, or caused to be initiated, a telephone solicitation call to the Virginia telephone numbers of Plaintiff and the putative VTPPA DNC Class members while their phone numbers were registered on the National Do Not Call Registry. VTPPA § 59.1-514(B).

166. Defendant and/or its third-party vendor, did not have prior express invitation or permission to make the calls.

167. Plaintiff and putative VTPPA DNC Class Members are entitled to an award of $500 for the first violation, $1,000 for the second violation, and $5,000 for each subsequent violation. VTPAA § 59.1-515(A).

168. Plaintiff and putative VTPPA DNC Class Members are entitled to an award of an amount not exceeding $5,000 for a first or second violation if determined to be willful. VTPAA § 59.1-515(B).

169. Plaintiff and putative VTPPA IDNC Class Members are entitled to an award of reasonable attorneys' fees and costs. VTPAA § 59.1-515(C).

170. Pursuant to VTPPA § 59.1-514.1, to the extent Defendant utilized a third-party vendor to place the illegal calls, Defendant is jointly and severally liable for such violation. VTPPA§ 59.1-514.1(A).

**FOURTH CAUSE OF ACTION**
**Violations of the VTPPA § 59.1-512**
**(On behalf of Plaintiff and the VTPPA Identification Class)**

171. Plaintiff and the proposed Class incorporate the allegations of paragraphs 1-151 as if fully set forth herein

172. Defendant initiated, or caused to be initiated, a telephone solicitation call to the Virginia telephone numbers of Plaintiff and the putative VTPPA Identification Class members. VTPPA § 59.1-514(B) and failed to provide the first and last name of the caller and/or the name of the person on whose behalf the telephone solicitation call was being made.

173. Plaintiff and putative VTPPA Identification Class Members are entitled to an award of $500 for the first violation, $1,000 for the second violation, and $5,000 for each subsequent violation. VTPAA § 59.1-515(A).

174. Plaintiff and putative VTPPA Identification Class Members are entitled to an award of an amount not exceeding $5,000 for a first or second violation if determined to be willful. VTPAA § 59.1-515(B).

175. Plaintiff and putative VTPPA Identification Class Members are entitled to an award of reasonable attorneys' fees and costs. VTPAA § 59.1-515(C).

176. Pursuant to VTPPA § 59.1-514.1, to the extent Defendant utilized a third-party vendor to place the illegal calls, Defendant is jointly and severally liable for such violation. VTPPA§ 59.1-514.1(A).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein and adopting policies and procedures that will compel Defendant's compliance with the TCPA and VTPPA;

D. An award of statutory damages;

E. An award of treble damages under the TCPA and enhanced damages under VTPPA;

F. An award of reasonable attorneys' fees and costs; and

G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

*/s/ Clinton W. Verity*
Clinton W. Verity, Esq. [VSB No. 75535]
Friedman Fisher Verity, PLLC
125 S. 14th Street, Suite 120
Richmond, VA 23219
Tel: (804) 602-7388
Fax: (804) 602-7768
cverity@ffvlaw.com

*/s/ Max S. Morgan**
Max S. Morgan
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
(**admitted pro hac vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30th, 2025, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing though the Court's CM/ECF system.

*/s/ Clinton W. Verity*
Clinton W. Verity, Esq. [VSB No. 75535]